Judge Underwood,
delivered the opinion of the Court.
At the February term, of the Green circuit court, 1820, the. plaintiff in error recovered á judgment, against Wilcox and Martin, for $550, in damages besides costs. The judgment at law having been enjoined at the August term, 1821, of said court, the injunction was dissolved, with costs and damages; the damages awarded, amounting to $56 33 1-2. Mitchell was statutory guardian to the plaintiffs in error, and their next friend in the prosecution of the suit against Wilcox and Martin. Brent was Mitchell’s surety, in his guardian bond. The plaintiffs in error, on attaining full age, instituted a suit in chancery, in' the circuit court, against Mitchell and Brents, to have an account of the guardianship transactions,, and to' compel the defendants to pay the amount due. If does not appear from the pleadings or proof, that any thing is involved in the controversy,- except the dam-' *441 ages recovered.in the suit at law, and in the chancery suit, and the costs of each. The bill charges, that Mitchell had collected all, and failed to pay over, he should have done.
Resisted, ?n tbatStheU judgments for the money commuted for a less sum in horses.
statutory guardian, or ndtheThaTa right to commute the mMte'due'38' ward or infant; ifhedo ^le for the" amount and interest; Q“erf- Whe¿y 0f debtor constitute an exoePtlon-
Mitchell does not deny his having settled the amount of the judgments, and received them fully; but insists, acting as he thought best, he compromised and took property at valuation, to-wit: horses; that he sold the horses for ‡378 62 1-2 only* and, that after deducting proper charges, he. had paid over the residue to his wards, in advances as they required.
The first question presented for consideration is, could Mitchell compromise the judgments, and receive horses in discharge of them? It might be made a question, whether he had lawful authority to discharge the defendants Wilcox ■ and Martin, against whom judgment had been rendered, upon any consideration he might think proper to accept- from-them* other than the amount of the judgments in money; but if he could, in doing so, it does not follow* that his wards would be bound to accept the consideration received by him. On the contrary, we think there is no such obligation imposed upon them, and that when a guardian commutes his ward’s debts, or judgments for property, he makes himself debtor to the wards for the amount, if they choose to recognize the discharge, of their debtors by the guardian. If there be any exception to this rule, growing out of the insolvency ,of. the debtor, from whom the guardian may receive a trifle, in lien of the whole debt, there is no circumstance in this cause, which can bring Mitchell within the exception.. The insolvency of Wilcox and Martin, is not shewn, and the presumption, in the absence of proof, cannot be, that they are insolvent, much less would such a presumption extend .to the sureties in the injunction bond. As statutory guardian, Mitchell had no authority to compromise, and to receive property for his wards, in discharge of the judgments, nor had he, as prochein ami, any power to do so, which can avail him in this case. As prochein ami, it was his duty to prosecute,faithfully and diligently. F.or misbehaviour, he is liable to the infant. We are therefore of opinion, that Mitchell is properly liable to th^ *442 plaintiffs in error, for $550, with interest thereon, at the rate of six per cent, per annum, from the day judgment was rendered therefor, up to the time he settled the judgment, by receiving horses, and also for the sum of $56 33 1-3, the damages awarded by the chancellor. Mitchell should be chaiged with interest on the damages assessed by the jury, on the trial at law, because, on the dissolution of the injunction, he could have collected interest.
The aggregate of principal and interest, due to ward, on the day of commutation, considered as capital in the hands of guardian; if his accounts not settled according: to law, responsible, after deducting legal disbursements and advances' from time to time, as made extinguishing interest first, and not compounding. (lucre. Can a guardian, on settlement, be credited for advances beyond the income-of his ward?
The aggregate, sum thus made up, should be considered as a capital coming to his hands, for his wards, on the day the horses were paid to him, and as he has' not. furnished an inventory of his ward’s estate, and settled his accounts as required by law, he must account for interest, at six per cent, per annum, on the capital, from the day it came to hi's hands, up to the time of rendering the final decree; but for all intermediate payments, lie must have credit as ofthe days, on which they were made, calculating- interest on the capital, to t.he date of the first payment, and then deducting it from principal and interest, if .the payment exceeds theamount of interest;and then calculate interest to the next payment, and so progress, as to pay off .theinterest first, andyet nottoallow compound interest. Holding Mitchell accountable to this extent, it is very-obvious, on a slight calculation, that the court has not decreed against him and his surety, as much as the plaintiffs in error were entitled to. From the statements made in'Mitchell’s answer, and from the depositions, it is cleat, that Mitchell did- not receive the horses in payment, earlier than August, 1821. He says, they were received, pending a bill of injunction in Washington, which was the last bill filed by Wilcoxj consequently, that in Green must have preceded it. The time when the horses were received, does not appear any where in the record.' Nor does it appear, that there were more injunctions than one, except from Mitchell’s answer. Without its appearing precisely when Mitchell did settle the judgment, it would not do injustice to assume six months after August term, 1821, as the. time; because, by diligence the debts might have been replevied and collected within that time, and it does not appear in evidence, that there was any thing to prevent it. On the return *443 of the cause, the circuit court will take the February term, 1822,as the date, up to which interest on the $550, is to be calculated, making two years. It is clear from Mitchell’s charges for keeping the horses, that they were received sometime before October, 1822, and it may be inferred, that it was later than February, but it can make very little difference in the calculation, whether it is predicated, on the ground, that the horses were received in February or the fall fob lowing. According to the foregoing principles, at the February term, 1822, Mitchell ought to have received $672 33 for the plaintiffs in error, exclusive of costs. With these costs it is unnecessary to charge him, because, he would have to pay them out in discharging officer’s fees, and for which consequently, he-ougbt not to be credited. From this sum should be taken'an allowance for Mitchell’s services as guardian in collecting the money, superintending suits, &c.-, say five per cent. $33 61, to which, add $10 for the attorney, over and above the legal fees, taxed for the attorney, &c., recovered as costs, and which sums, not to be resisted by the complainants, and there is an amount of$43,61, to be taken from $672 33, which leaves $628 72, clear of charges, which the plaintiffs in error were entitled to, at the last February term, 1822, of the Green circuit court., This sum, divided into three parts, gives. $209 57, for each ward. It was Mitchell’s duty by law, to give an account of this to the court of his county, and under their directions, to keep it out on interest, Upon such security.as they might approve, and to make settlements from year to year. Having failed' to do so, he must now answer for the last named sum, with interest to each of.his wards, as already directed, from the February term, 1822, of the Green circuit court. But he must have credit for the following sums, as paid at the times specified, to-wit; $62 26, balance after deducting item for lent money and fee. bill, both of' which are denied, and there is no proof of them, paid his ward, Maria, December 9th, 1822; $33 33 1-3, being one thirdof the $100 order, in favor of Yates Forbes, to be considered as paid, April 23d, 1823; $36 75, paid his ward, Eliza, April 21, 1823, and^her portion of said'order, $33 33 1-3, paid' April 23, 1823; $39 6 1-4, paid his ward, Patsey, and *444 $33 33 1-3, her share of said order, in all $72 39, paid 23d April, 1823. There is no date to the important items in the account, exhibited by Mitchell against his ward, Patsey, except the two last, and they are only •dated by the year. We have therefore, put the whole credit, under date of 22d April, 1824, de minimis non curat lew.
Mitchell cannot enforce his contract with his ward, Patsey, for the máre, because of her non age at the time. The order for $10, is subject to the same objection. Good policy-and positive law, alike, render the contracts of infants, voidable. The complainant, Patsey, relies on her infancy to avoid the contract, rel-. alive to the mare. Butasút is acknowledged in her answer, that the mare was worth $45 or $50 currency, worth half its nominal amount in specie, and as it is shewn in proof, that she sold the mare to Mitchell’s son for $42 50 currency, and that too, after she arrived at age, as we think, may be fairly inferred from the evidence, it is not reasonable upon her disaffirmance of the contract, to refuse to account for the value of the mare.- it would be unjust that shé should appropriate the property to her own use, after arriving at age, without accounting for its- value. While, therefore, we exonerate her from the contract, under the privilege of infancy, we do not perceive,' under the circumstances of this case, that it would violate any settled principle, to require the complainant, Patsey, to give Mitchell credit for $25, the specie value of the mare, according to her admission. The circuit court will therefore give a credit, for that sum as paid-, on the day said Patsey received the mare. The principle that complainants should do justice before asking it, directs us in this particular case. We do not mean to establish á precedent, by which guardians shall be tolerated in withholding the estates of their wards until they account for property, imprudently sold to them by their guardian, and squandered and spent, during their minority, Mitchell must loose the last item in his account, to-wit: $5 for the season of a mare to Conqueror^ because it is denied, and there is no proof. On the return of the cause to the circuit court, if Mitchell has made any payments under the decree of that court, they must be credited to him as equity may *445 require. The case of Campbell vs. Williams, 3 Monroe, 122; may be consulted on the duties of guardians. It is to be regretted, that their duties in general are so loosely performed. We have no doubt they are often neglected, without any culpable motive, and they are frequently transcended, as in this case, with the alleged design of faenefitting the ward, and it may frequently happen, that cases bearing- with apparent hardships upon guardians, may present themselves. To these we must say, that nothing can justify us, in tolerating guardians to depart from the law, and if their discretion was made the’rule of their conduct, instead ofthe injunctions of the statute, the abuses to which it -would lead, would be mpre intolerable thán the occasional losses, resulting from good motives, and misplaced .confidence.
Triplett, for plaintiffs; Denny and Crittenden, for dedefendants.
The decree of the court below is reversed, and the cause remanded for a decree, not inconsistent with this opinion. The plaintiffs in error, must recover their costs.